# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ALPINE GLASS, INC., | Civil No. 12-2867 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| STATE FARM FIRE AND CASUALTY COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendants. | |

---

Brian F. Murn, Charles J. Lloyd, and Rachael J. Abrahamson, **LIVGARD & LLOYD PLLP**, 2520 University Avenue Southeast, Suite 202, Minneapolis, MN 55414, for plaintiff.

Leatha G. Wolter, Tamara L. Rollins, and Kathleen M. Ghreichi, **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendants.

Plaintiff Alpine Glass, Inc. ("Alpine Glass"), an auto glass repairer, brought this declaratory judgment action against Defendants, State Farm Fire & Casualty Company and State Farm Mutual Automobile Insurance Company (collectively, "State Farm"), seeking to consolidate 140 shortpay claims for arbitration under the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71. Alpine Glass alleges that State Farm underpaid Alpine Glass for auto glass repairs and replacements covered by insurance policies that State Farm issued to Alpine Glass customers.

Alpine Glass moves to consolidate the 140 claims into a single arbitration proceeding. State Farm brought an initial motion for summary judgment, arguing that this case presents purely legal issues for the Court to resolve in its favor and no factual issues for an arbitrator to decide. Several months after filing its first motion for summary judgment, State Farm now brings a second motion for summary judgment, arguing that a lawsuit limitation clause in one of the underlying insurance policies bars Alpine Glass' action to consolidate claims arising out of that policy. The Court will deny State Farm's first motion for summary judgment because the issues presented by the shortpay claims are factual issues of the type to be resolved in arbitration. The Court will also deny State Farm's second motion for summary judgment because it concludes that the lawsuit limitation clause does not apply to arbitration proceedings or proceedings to consolidate arbitration. Finally, the Court will grant Alpine Glass' motion for consolidation, as consolidation of the 140 claims will promote efficiency and decrease the risk of inconsistent judgments.

## BACKGROUND

### I.    ALPINE GLASS' BILLING PRACTICES

Alpine Glass is engaged in the business of automobile glass repair and replacement. (Decl. of Michael Reid ¶ 3, Sept. 3, 2012, Docket No. 27.) A large percentage of the work that Alpine Glass performs is paid for by its customers' auto insurance companies. (*Id.* ¶ 4.) It is the usual practice for Alpine Glass' customers to assign their individual insurance claims to Alpine Glass. (*Id.*) By assigning their claims, customers "authorize and direct [their] insurance company to pay th[e] invoice directly to

Alpine Glass, Inc." and "assign any and all claims in connection with th[e] automobile glass installation or repair against [their] insurance company and all policy proceeds due for this installation or repair to Alpine Glass, Inc." (First Aff. of Melissa Kern, Ex. 5 at 2, Sept. 24, 2013, Docket No. 33.)[1]  Alpine Glass then bills the insurance company for the work performed and receives payment directly from the insurance company.  (Reid Decl. ¶ 4.)

In preparing invoices to submit to an insurance company for reimbursement, Alpine Glass relies upon a price list known as National Auto Glass Specifications ("NAGS") that is widely used in the auto glass industry.  (*Id.* ¶ 6.)  NAGS provides a benchmark price for more than 10,000 auto glass parts in addition to the standard number of labor hours required for the installation of each part.  (*See, e.g.*, *id.*, Ex. A.)  Alpine Glass uses the NAGS benchmark as a starting point for its pricing, but multiplies the NAGS benchmark by a set factor before submitting the invoices for reimbursement.  (*Id.* ¶ 7.)  Alpine Glass' ultimate invoice thus might reflect a price that is greater or less than the NAGS price by a specific percentage.  (*Id.*)  For example, Alpine Glass' might charge the list price minus 14% or the list price plus 50%.  Whichever factor Alpine Glass arrives at, it applies that same factor to all of its invoices regardless of the parts involved. (*Id.*)  Alpine Glass periodically adjusts the factor and uniformly adjusts its billing to reflect the new factor.  (*Id.*)  Alpine Glass bills for labor either as a flat installation rate or on an hourly basis using the benchmark installation times included in the NAGS, subject

---

[1] Page numbers in citations refer to the CMECF pagination unless otherwise noted.

to the same type of factoring described above.  (*Id.* ¶¶ 9, 11.)  An Alpine Glass invoice also typically includes a flat rate for a glass adhesive kit.  (*Id.* ¶ 12.)

## II.   STATE FARM INSURANCE COVERAGE

### A.   Auto Glass Damage

State Farm provides automobile insurance to the Alpine Glass customers involved in this matter.  (*See* First Kern Aff. ¶ 6; Reid Decl., Ex. E.)  State Farm had two policies in effect in Minnesota during the relevant time period that provided coverage for auto glass damage.  (First Kern Aff., Exs. 1-2.)  The policies provide that State Farm will pay the cost of repair or replacement based upon one of the following:

1. the cost of repair or replacement agreed upon by [the insured] and [State Farm];

2. a competitive bid approved by [State Farm]; or

3. an estimate written based upon the prevailing competitive price.  The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by [State Farm].  If [the insured] ask[s], [State Farm] will identify some facilities that will perform the repairs at the prevailing competitive price.  [State Farm] will include in the estimate parts sufficient to restore the vehicle to its preloss condition.

(*Id.*, Ex. 1 at 3 (emphases omitted).)[2]

During the relevant time period, State Farm was also bound by a Consent Order entered into by State Farm and the Minnesota Commissioner of Commerce in 2002.  (*Id.* ¶ 4, Ex. 3.)  The Consent Order arose out of allegations by the Commissioner that State

---

[2] The language of the second insurance policy is substantially similar in all material respects.

Farm had "engaged in various unfair trade and claim settlement practices in its handling of auto glass claims in Minnesota." (*Id.*, Ex. 3 at 9.) The Consent Order resolves these allegations and requires State Farm to implement certain processes for handling auto glass claims. (*Id.*, Ex. 3 at 9-10.)

With respect to glass claims for which State Farm lacked notice of the loss prior to repairs being performed[3] the Consent Order provides three acceptable procedures that State Farm can follow in paying auto glass claims. The first procedure that State Farm can use requires it to pay "the lower amount of three competitive bids." (*Id.*, Ex. 3 at 12.) The first bid is the invoice from the auto-glass repairer seeking reimbursement, in this case, Alpine Glass. (*Id.*) The second bid is to be from a non-O&A[4] glass provider and the third is to be from a glass provider within State Farm's O&A program. (*Id.*) State Farm can use 86% of the NAGS price plus a cost kit of $20 and labor in the amount of $40 in lieu of a bid from a non-O&A glass shop. (*Id.*, Ex. 3 at 13.) Instead of this competitive bid procedure, the Consent Order also authorizes State Farm to "pay the full

---

[3] The majority of the glass claims at issue are claims of which State Farm did not receive notice prior to Alpine Glass performing the repairs. For the few Alpine Glass claims for which it had prior notice, State Farm contends that it followed the procedures outlined in the Consent Order, which require State Farm to obtain two competitive bids prior to the repair and pay the lower of the two bids. (First Kern Aff., Ex. 3 at 11-12.)

[4] Individual glass shops can contract with State Farm to be part of its "Offer and Acceptance" or "O&A" program. (First Kern Aff. ¶ 10.) In these at-will contracts, the glass shops and State Farm agree on issues relating to claims, including the price to be paid for glass replacement and repair. (*Id.*) All non-O&A glass shops that perform work for State Farm customers are first given the opportunity to accept the agreed upon O&A price for the work performed. (*Id.*) If that price is not accepted, State Farm follows the competitive bidding process. (*Id.*)

invoice received" or pay "86% of the NAGs, plus the cost kit ($20) and labor ($40)." (*Id.*)

State Farm contends that with respect to the 140 Alpine Glass claims at issue, it utilized the first procedure – paying Alpine Glass the lowest of three competitive bids. (*Id.* ¶ 6.)  State Farm alleges that for each of the claims it paid either the lowest of the three competitive bids or the amount that State Farm would pay an O&A glass shop, where that amount exceeded the lowest of the three bids.  (*Id.* ¶ 8.)  State Farm has submitted documentation of the competitive bids that State Farm obtained for each of the 140 claims and accompanying documentation of the amount that State Farm paid Alpine Glass for each of the claims.  (*Id.*, Ex. 4.)

## B.    Lawsuit Limitation

One of the policies that provided coverage for Alpine Glass' customers during the relevant time period contains a lawsuit limitation clause that is relevant to State Farm's second motion for summary judgment.  The policy provides, in relevant part:

**Legal Action Against Us**

Legal action may not be brought against [State Farm] until there has been full compliance with all provisions of this policy.  In addition, legal action may only be brought against [State Farm] regarding:

. . . .

Physical Damage Coverages if the legal action relating to these coverages is brought against [State Farm] within one year immediately following the date of the accident or ***loss***.

(Second Aff. of Melissa Kern, Ex. A at 45-46, Dec. 27, 2013, Docket No. 48 (emphasis in original).)  This policy governs 115 of the glass claims at issue in the present case. (*Id.*, Ex. B.)

## III.   PROCEDURAL HISTORY

Alpine Glass filed a complaint in Hennepin County District Court on October 24, 2012, seeking consolidation of 140 claims[5] into a single arbitration proceeding pursuant to Minn. Stat. § 65B.525, subd. 1, which provides for "the mandatory submission to binding arbitration of" all no-fault automobile insurance claims "where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage." (Notice of Removal, Ex. 1 ("Compl.") ¶¶ 14-15, Nov. 13, 2013, Docket No. 1.)  State Farm removed the case to federal court based on diversity jurisdiction.  (Notice of Removal at 2.)

---

[5] Alpine Glass initially sought consolidation of 148 claims.  (*See* Compl., Ex. A.)  The parties have stipulated that eight of those claims be dismissed from the current action.  *Alpine Glass Inc. v. State Farm Fire & Cas. Co.*, Civ. No. 12-2867, 2013 WL 2434942, at *1 n.1 (D. Minn. June 4, 2013); (*see also* Order, Apr. 24, 2013, Docket No. 22).  In the present motion Alpine Glass suggests that it seeks consolidation of 141 claims.  (*See* Pl.'s Mem. in Supp. of Mot. to Consolidate Invoices for Arbitration, at 1-2, Sept. 3, 2013, Docket No. 26.)  Comparing the claims listed in Alpine Glass' complaint and the ones listed in the attachment to the current motions, it appears that Alpine Glass has added a claim for Alison Arver, claim number MSI-74243.  (*Compare* Compl., Ex. A at 10, *with* Reid Decl., Ex. E at 19.)  Because this claim is not listed in the original complaint, and Alpine Glass has not sought amendment of its complaint to add this claim, the Court will not include this claim in its order that Alpine Glass' claims be consolidated for arbitration.  *See BuyRite Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-4462, 2010 WL 145277, at *3 n.3 (D. Minn. Jan. 8, 2010) ("The claims in this action are those that were pleaded in the Complaint, and any additional claims not pleaded in the Complaint are not properly before the Court.").

Alpine Glass' complaint alleges that during the time period in question State Farm paid Alpine Glass' claims based on its own factoring from the NAGS price that was different than Alpine Glass' factoring, and consequently underpaid Alpine Glass' claims. (Compl. ¶¶ 7, 9.)  State Farm paid Alpine Glass approximately $80,000 on the claims at issue, which Alpine Glass argues leaves a shortfall of approximately $103,000 (excluding the value of the eight claims that have since been dismissed pursuant to stipulation).  (*Id.* ¶ 6, 11); *see also Alpine Glass, Inc. v. State Farm Fire & Cas. Co.*, Civ. No. 12-2867, 2013 WL 2434942, at *1 & n.3 (D. Minn. June 4, 2013).

The Court previously denied Alpine Glass' motion to remand, finding that the alleged amount of the underpayment on the 140 individual claims could be aggregated for purposes of meeting the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a)(1).  *See Alpine Glass, Inc. v. State Farm Fire & Cas. Co.*, Civ. No. 12-2867, 2013 WL 2434942, at *2-3 (D. Minn. June 4, 2013).[6]  Additionally the Court concluded that although auto glass claims are subject to mandatory arbitration under Minnesota law, it retained subject matter jurisdiction to decide any preliminary issues of law such as "the validity of assignments, the interpretation of an insurance policy, the construction of the No-Fault Act, and other legal issues not directed at the merits of the shortpay claims," as well as whether the claims could be consolidated for purposes of arbitration. *Id.* at *4

---

[6] Notably, the value of the individual claims cannot be aggregated for purposes of determining the propriety of mandatory arbitration. *See Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 804 (Minn. 2004).  Therefore, although the aggregate of Alpine Glass' claims against State Farm exceed the $10,000 statutory limit under the No-Fault Act, each individual claim is less than $10,000 and therefore arbitration is mandatory. *See id.* (*see also* Reid Decl., Ex. E).

# ANALYSIS

## I.   MOTIONS FOR SUMMARY JUDGMENT

State Farm brings two motions for summary judgment.  In the first motion, State Farm argues that, with respect to all 140 auto glass claims, the only issues presented by Alpine Glass' complaint are issues of law that can be resolved by the Court, and are therefore not subject to mandatory arbitration.  Specifically, State Farm argues that the allegations in the complaint present issues regarding coverage under the policies and the validity of assignments between Alpine Glass and its customers, which are issues appropriate for resolution by the Court not an arbitrator.  In a second motion for summary judgment, filed after the Court held a hearing on the first motion, State Farm argues that the lawsuit limitation clause in one of the policies bars Alpine Glass' present action for consolidation of the 115 claims governed by that policy, as this action was filed more than one year after the losses giving rise to those claims occurred.[7]  The Court will begin by addressing the scope of its jurisdiction over claims potentially subject to arbitration before turning to the individual issues raised in the first and second motions for summary judgment.

---

[7] The Court notes that State Farm's reply brief in support of its second motion for summary judgment was filed more than fourteen days after Alpine Glass filed its responsive memorandum, and is therefore untimely.  *See* D. Minn. LR 7.1(c)(3)(A).  Although it was untimely, the Court will consider the contents of the reply as Alpine Glass has not suffered "any material prejudice resulting from the late filing."  *Moore v. City of Deslodge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

## A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B.    Jurisdiction Under the No-Fault Act

The Minnesota No-Fault Act provides that arbitration is mandatory to resolve "all claims . . . in an amount of $10,000 or less."  Minn. Stat. § 65B.525.  Courts lack subject matter jurisdiction over claims that are subject to mandatory arbitration under Minnesota's No-Fault Act.  *Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp. 2d 962, 967 (D. Minn. 2008) (explaining that the No-Fault Act's "arbitration requirement cannot be waived, and deprives courts of subject matter jurisdiction over no-fault claims of $10,00 or less"); *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 805 (Minn. 2004) (same).

But the Court is deprived of subject matter jurisdiction only over questions of fact arising directly from the arbitrable claim.  "[N]o-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts."  *Weaver v. State Farm*

*Ins. Cos.*, 609 N.W.2d 878, 882 (Minn. 2000).   For example, the Court can exercise jurisdiction to order consolidation of claims for purposes of arbitration under the No-Fault Act.   *See BuyRite Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-4462, 2010 WL 145277, at *1 (D. Minn. Jan. 8, 2010).   The Court can also decide the validity of assignments, interpret an insurance policy, construe the No-Fault Act, and determine other legal issues not directed at the merits of shortpay claims.[8]   In addition to questions of law, "[w]hen the question of whether coverage exists for a claim under an insurance policy turns on a question of fact, that question of fact must be decided by the court." *Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, 695 F. Supp. 2d 909, 921 (D. Minn. 2010) (citing *Costello v. Aetna Cas. & Sur. Co.*, 472 N.W.2d 324, 326 (Minn. 1991)).

Although Courts have subject matter jurisdiction over legal issues arising out of arbitrable claims "there is no per se requirement under Minnesota's No-Fault Act that courts resolve any legal issues before ordering arbitration." *Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, 531 F.3d 679, 683 n.4 (8th Cir. 2008).   Even though an arbitrator's authority to conclusively determine issues extends only to facts, arbitrators are not prevented from deciding issues of law and when they do, such decisions are subject to

---

[8] *See Alpine Glass, Inc. v. Am. Family Ins. Co.*, Civ. No. 06-4213, 2007 WL 1152931, at *2 (D. Minn. Apr. 18, 2007) (determining validity of assignments); *Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-1148, 2006 WL 3486996, at *2-3 (D. Minn. Dec. 4, 2006) (dismissing a counterclaim challenging the validity of assignments); *Costello v. Aetna Cas. & Sur. Co.*, 472 N.W.2d 324, 326 (Minn. 1991) ("The court, however, must make a finding of coverage before Costello is entitled to invoke his right to arbitration."); *AMCO Ins. Co. v. Ashwood-Ames*, 534 N.W.2d 740, 741 (Minn. Ct. App. 1995) (concluding that a determination of insurance coverage was beyond the scope of the arbitrator's fact-finding authority under the No-Fault Act, and was a question of law for the court).

*de novo* review.  *See Weaver*, 609 N.W.2d at 882; *Gilder v. Auto-Owners Ins. Co.*, 659 N.W.2d 804, 807 (Minn. Ct. App. 2003) (explaining that "when called upon to grant relief, an arbitrator need not refrain from deciding a question simply because it is a legal question," but that decision will be subject to *de novo* review).    Specifically, the Minnesota Supreme Court has recognized that in order to award benefits, arbitrators must necessarily "apply the law to the facts," which requires legal determinations.  *W. Nat'l Ins. Co. v. Thompson*, 797 N.W.2d 201, 207 (Minn. 2011).    Therefore, there is no **requirement** that the Court exercise jurisdiction over every possible legal issue before a matter is submitted to arbitration.    However, "where the Court is presented with an issue that it will ultimately be required to decide, and which necessarily impacts whether arbitration is appropriate at all – such as a coverage issue – the Court should resolve the issue before arbitration proceeds."  *Boulay Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 10-798, 2010 WL 3033732, at *4 (D. Minn. June 28, 2010), *report and recommendation adopted by*, 2010 WL 3033735 (D. Minn. July 26, 2010); *see also Costello*, 472 N.W.2d at 326 ("Where the coverage dispute arises on a motion to compel arbitration or to enjoin arbitration, the court ought to decide the issue in the first instance.").

### C.    Coverage Issues

In its first motion for summary judgment, State Farm contends that "[t]he record unequivocally shows that, in adjusting the glass claims, the State Farm Defendants fully complied with the unambiguous terms of the Consent Order."  (Defs.' Mem. in Supp. of Joint Mot. for Summ. J. at 9, Sept. 24, 2013, Docket No. 32.)    Therefore, State Farm

argues that the case presents a purely legal coverage issue for the Court to resolve and does not present any material issues of fact for an arbitrator to decide.

The Court finds that, based on the arguments in State Farm's first motion for summary judgment, arbitration at this stage of the case is appropriate because State Farm has failed to identify the existence of a preliminary legal issue of the kind resolved by courts prior to arbitration in other cases. *See, e.g.*, *Alpine Glass, Inc. v. Country Mut. Ins. Co., Inc.*, Civ. No. 09-3492, 2010 WL 4386896, at *2 (D. Minn. Oct. 28, 2010) (resolving a statute of limitations issue before consolidating claims for arbitration). For example, State Farm does not argue that Alpine Glass' claims fail to comply with the requirements of the insurance policies in some coverage-precluding manner or fall outside the scope of the No-Fault Act's mandatory arbitration provision.[9]

Nor has State Farm identified a factual issue that functions as a predicate to coverage, such that it could be decided by the Court, rather than an arbitrator. *See Costello*, 472 N.W.2d at 326. "The distinction between coverage disputes for the court and other types of disputes for the arbitrators is that questions that go 'not to the merits of a claim but to whether a claim exists' should be decided by the district court." *Thompson*, 797 N.W.2d at 206 (quoting *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 290-91 (Minn. 1983)). In *Myers*, for example the court determined that the vehicle in question was not an uninsured motor vehicle within the definition of the policy, and therefore no coverage existed for the accident. 336 N.W.2d at 290-91.

---

[9] The Court notes that State Farm has presented a legal issue proper for resolution by the Court in its second motion for summary judgment, which the Court discusses below, by arguing that application of the lawsuit limitation clause precludes the present action for consolidation.

Similarly, in *AMCO Insurance Company v. Ashwood-Ames*, 534 N.W.2d 740, 741-42 (Minn. Ct. App. 1995), the court held that whether the facts at issue constituted an accident within the meaning of the insurance policy was a question for the court. In both *Myers* and *AMCO*, the mixed questions of fact and law were required to be decided by the court rather than the arbitrator because answering the questions was critical to determine whether there was coverage at all, and therefore a right to arbitrate.

There is no dispute in this case that coverage for the Alpine Glass claims exists. The existence of coverage is evidenced both by the policies and the fact that State Farm paid part of the claims. State Farm has not alleged for example, that certain types of damage was incurred for which coverage was unavailable. Instead, Alpine Glass' claims are based on the type and adequacy of the procedure that State Farm used to calculate reimbursement.[10] *Cf. Thompson*, 797 N.W.2d at 207 ("The dispute in this case is not whether a claim for no-fault benefits exists, but rather the reasonableness of the request

---

[10] Alpine Glass' position does not seem to entirely align with State Farm's description of its claims paying process. For example, the primary contention in Alpine Glass' complaint is that State Farm used an inappropriate multiplier from the NAGS price in determining the value of Alpine Glass' claims. It is true that disputes often arise between auto glass providers and insurance companies when the two entities use different factors of the NAGS price to determine an invoice price and a reimbursement value, respectively. *See, e.g.*, *Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *1 n.1 (D. Minn. Oct. 28, 2010). Such a dispute is resolved by the arbitrator finding facts to determine whether the auto glass provider's billing formula yields a reasonable price that falls within the scope of the insurance company's obligation to pay. *Id.* Here, Alpine Glass does not appear to directly respond to State Farm's contention that it does not pay Alpine Glass' claims based on a calculation from the NAGS, but rather through a competitive bidding process. As explained below, however, the heart of Alpine Glass' claims is essentially that State Farm underpaid its claims. (*See* Pl.'s Mem. in Supp. of Mot. to Consolidate Invoices for Arbitration at 2, Sept. 3, 2013, Docket No. 26 (arguing that the essence of the case is a dispute about "how much State Farm is required to pay for replacing broken glass").) Although the precise method of payment at issue may not be based solely on an NAGS calculation, the claims still appear to raise factual issues to be decided by an arbitrator.

for examinations under oath and the Thompsons' refusal to comply with Western National's request.  These issues go to the merits of the claim, not the existence of a claim.  Therefore, this dispute is not properly characterized as a coverage dispute.").  Here, the facts identified by State Farm do not relate to whether coverage exists, but rather relate to whether State Farm satisfied its obligations pursuant to that coverage by paying Alpine Glass an appropriate amount.  Indeed, it is difficult to imagine, under State Farm's view, when, if ever, arbitration would be required, as State Farm essentially contends that the district court, not the arbitrator, should decide claims in which the insurance company argues "we paid enough" and the glass repairer disputes that contention.

That State Farm's first motion for summary judgment asks the Court to play the role of the arbitrator is confirmed by the fact that State Farm has produced hundreds of pages of record documents and requests that the Court analyze each document to determine whether State Farm indeed followed an appropriate competitive bidding process in paying Alpine Glass' claims.  The documents produced by State Farm highlight the need for arbitration.  State Farm contends that the documentation of its competitive bidding process shows that State Farm clearly complied with the policies and the Consent Order in paying Alpine Glass claims, and thus there are no fact issues to be decided in arbitration.  But the competitive bid sheets themselves raise numerous questions to be resolved by an arbitrator.

For example, in a letter dated December 11, 2009, State Farm indicates that it will pay Alpine Glass $379.92 (on a $797.17 invoice) as the lower of the bids between Abra

Auto Body ($379.92) and Boulay Auto Glass ($777.17).  (First Kern Aff., Ex. 4 at 85.)

The accompanying competitive bid sheet does not, however, list a typewritten bid for

Boulay.  (*Id.*, Ex. 4 at 87.)  Rather, that amount is handwritten at the bottom of the form.

(*Id.*)  Additionally, the competing shop bid from Abra does not include any amount in the

space labeled "LABOR AMT."  (*Id.*)  Finally, the form says that the "check amount to

insured" is $280.69, which does not correspond to the amount State Farm apparently paid

Alpine Glass according to the letter.  (*Id.*)

Another letter, dated October 21, 2009, indicates that State Farm will pay Alpine

Glass $294.13 (on a $680.71 invoice) as the lower of the bids between Auto Glass Today

($294.13) and Boulay Auto Glass ($631.71).  (First Kern Aff., Ex. 4 at 7.)   The

accompanying competitive bid sheet however contains bids from "Line of Sight Auto

Glass" and "The Windshield Guys."  (*Id.*, Ex. 4 at 9.)  Neither of these bids match the

numbers quoted in the October 21 letter.  (*Id.*)  Rather, at the bottom of the document,

handwritten notes indicate that a "system bid" was $294.13, Boulay bid $631.71 and

Auto Glass Today bid $294.13.  (*Id.*)

These letters raise factual issues regarding whether State Farm employed a

competitive bidding procedure.   For example, an arbitrator could find that the

handwritten notes on State Farm's bids are not credible evidence of having obtained the

necessary bids.   Additionally, the arbitrator could find, in individual cases, that State

Farm failed to pay in accordance with the lowest bids.  An arbitrator could also find that

State Farm did not appropriately compensate Alpine Glass because its competitive bids

did not include labor costs.  This is precisely the type of determination an arbitrator is

qualified to make.  *See Garlyn, Inc. v. Auto-Owners Ins. Co.*, 814 N.W.2d 709, 713 (Minn. Ct. App. 2012) (holding that an arbitrator made a finding of fact when it determined whether the insurance company paid "the necessary cost, at local prices, to repair or replace the property or damaged parts with material of similar kind and quality").  State Farm's motion clearly anticipates that some reviewing authority will page through each document it has produced, and determine whether it appropriately paid Alpine Glass' claims.  As contemplated by the No-Fault Act, this is a job for an arbitrator.  To the extent the arbitrator's review involves any interpretations of the policies or the requirements of the Consent Order, the Court will review those findings *de novo* in due course.

### D.      Validity of Assignments

State Farm also argues in its first motion for summary judgment that there are ten claims in which Alpine Glass has no proof of assignment, because no customer signature exists on the produced form.  State Farm urges the Court to grant summary judgment in its favor on these claims because Alpine Glass has not established an entitlement to arbitration with respect to those claims.

Numerous Minnesota state and federal district courts have held that whether documents were executed authorizing an assignment is appropriately dealt with in the first instance by an arbitrator.  In allowing arbitration over assignments to proceed, courts have typically distinguished between legal issues – which challenge whether assignments are allowed under an insurance policy – and factual issues – which challenge whether customers in fact assigned their rights to the auto glass repairer.  *Alpine Glass, Inc. v. Am.*

*Family Ins. Co.*, Civ. No. 06-4213, 2007 WL 1152931, at *2-3 (D. Minn. Apr. 18, 2007) (distinguishing between claims regarding the validity of assignments which revolve around the scope of anti-assignment language in an insurance policy and claims which allege factual affirmative defenses to liability regarding the existence and validity of assignments).  Most courts have determined that a factual challenge to the existence and validity of assignments is appropriately decided by an arbitrator.[11]  *See, e.g.*, *BuyRite Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-4462, 2010 WL 145277, at *2 (D. Minn. Jan. 8, 2010); *Boulay Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, No. 27-CV-12-14646, slip op. at 2-4 (Minn. Dist. Ct. Dec. 12, 2012);[12] *Alpine Glass, Inc. v. Auto Club Ins. Corp.*, No. 27-CV-12-14616, slip op. at 2-3 (Minn. Dist. Ct. Dec. 14, 2012).[13]  Such

---

[11] But in *Alpine Glass, Inc. v. Illinois Farmers Insurance Co.*, 695 F. Supp. 2d 909 (D. Minn. 2010), the court found that although the factual question of whether the insureds had executed an assignment did not go to the existence of coverage, as did the factual questions that the Minnesota Supreme Court has determined are appropriate for court (rather than arbitrator) resolution, it reasoned that the questions were analogous.  695 F. Supp. 2d at 921.  Specifically, the court analogized to the reasoning of those Minnesota Supreme Court cases and found that "(1) this Court (not an arbitrator) must decide whether Alpine has the right to compel Farmers to arbitrate a short-pay claim; (2) Alpine does not have the right to compel arbitration unless it has received an assignment of that claim from an insured; and therefore (3) if the existence of an assignment turns on an issue of fact, the Court must decide that issue of fact."  *Id.*  By extending the analogy to cover disputes of this kind, this reasoning appears to take too many disputes away from the arbitrator.  Unlike issues identified by the Minnesota Supreme Court as appropriate for court resolution, which involved interpretation of a policy plus factfinding, determining whether letters were signed is a purely factual issue, best dealt with the arbitrator in the first instance. Although only ten claims are at issue here, it is easy to imagine cases in which hundreds or even thousands of assignments are disputed.  The purpose of the No-Fault Act, to encourage arbitration, would be thwarted if each of those claims had to be litigated in court first.

[12] (*Reproduced at* First Decl. of Rachael J. Abrahamson, Ex. 28 at 49, Sept. 3, 2012, Docket No. 28.)

[13] (*Reproduced at* First Decl. of Rachael J. Abrahamson, Ex. 29 at 59, Sept. 3, 2012, Docket No. 28.)

courts have recognized that "[p]ostponing the arbitration of dozens of no-fault claims so that the court and the parties may delve into the fact-intensive endeavor of identifying the signatory of a particular document would frustrate" the intent of the No-Fault Act. *Boulay Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, No. 27-CV-12-14646, slip op. at 4 (Minn. Dist. Ct. Dec. 12, 2012); *see also Alpine Glass, Inc. v. Am. Family Ins. Co.*, Civ. No. 06-4213, 2007 WL 1152931, at *3 (D. Minn. Apr. 18, 2007) ("[T]he fact issues regarding the existence and validity of each of the fourteen hundred assignments potentially at issue in this litigation are best arbitrated in the first instance, and will be subject to review by the courts following a ruling by the arbitrator.  To permit American Family to litigate such numerous factual defenses to liability on the shortpay claims would contravene the Minnesota legislature's intent that No-Fault claims be subject to mandatory arbitration.").  For these reasons, the Court finds that the issue of whether Alpine Glass received assignments for the ten claims identified is a decision best left to arbitration.

### E.    Lawsuit Limitation Clause

In its second motion for summary judgment, State Farm argues that the limitation clause in one of the policies bars Alpine Glass' present action to consolidate the 115 glass claims that are governed by that policy.  Specifically, State Farm argues that Alpine Glass' present lawsuit, which seeks consolidation of claims for purposes of arbitration, is a "legal action" within the meaning of the policy.  Because the loss underlying those glass claims occurred more than one year prior to Alpine Glass' filing of the present

lawsuit, State Farm contends that the present lawsuit is barred by the lawsuit limitation clause.

Minnesota courts have concluded that the term "action" means "any in-court proceeding," and does not include arbitration. *Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *2 (D. Minn. Oct. 28, 2010); *see* Minn. Stat. § 645.45(2) (defining "action" for purposes of Minnesota Statutes as "any proceeding in any court of this state"); *Lucas v. Am. Family Mut. Ins. Co.*, 403 N.W.2d 646, 650 (Minn. 1987) (concluding that the term "'action' refers only to a judicial proceeding" and observing that "historically a proceeding in arbitration has not been deemed a judicial proceeding"); *Vaubel Farms, Inc. v. Shelby Farmers Mut.*, 679 N.W.2d 407, 412 (Minn. Ct. App. 2004) (explaining that while "'action' is 'confined to judicial proceedings'" "[a]rbitration, on the other hand, is an adjudicative process carried out **outside** the established tribunals of justice" (emphasis in original) (quoting *Spira v. Am. Standard Ins. Co.*, 361 N.W.2d 454, 457 (Minn. Ct. App. 1985)).   Accordingly, courts have concluded that lawsuit limitation clauses like the one before the Court that limit the time in which a "legal action" may be brought do not apply to limit commencement of an arbitration proceeding. *See Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *2 (D. Minn. Oct. 28, 2010) (noting that a lawsuit limitation period defining the time in which to bring "legal action" against the insurer did not encompass "arbitration proceedings themselves"); *Vaubel Farms, Inc.*, 679 N.W.2d at 412 (concluding that a two-year limit for lawsuits in an insurance policy did not bar

arbitration proceedings).[14]  In light of this precedent, the Court concludes that the lawsuit

limitation clause at issue in State Farm's policy does not bar Alpine Glass' right to

---

[14] State Farm relies upon *Johnson v. Mutual Services Casualty Insurance Co.*, 732 N.W.2d 340 (Minn. Ct. App. 2007), for the proposition that lawsuit limitations periods bar arbitration proceedings unless "ambiguous policy language would lead a reasonable insured to conclude that claims can be arbitrated after expiration of the suit limitations period." (Reply at 7, Feb. 4, 2014, Docket No. 53.)  State Farm argues that because the policy language "expressly applies to glass claims" such claims cannot be arbitrated more than one year after the loss, and once "the contractual right to bring a matter to court has expired, the right to arbitrate has been lost." (*Id.* at 7-8.)

The Court notes, as an initial matter, that this position taken in State Farm's reply brief – that Alpine Glass cannot arbitrate the 115 claims at issue – is different than the relief requested in State Farm's second motion for summary judgment and its initial memorandum in support of that motion.  In its motion for summary judgment State Farm requested "dismissal of **Plaintiff's declaratory action**" and argued that "**this suit** was untimely." (Defs.' Second Mot. for Summ. J. at 1, Dec. 27, 2013, Docket No. 45 (emphasis added)).  In its accompanying memorandum, State Farm argued that "[c]learly, the legal action limitation clause applies to **this action for consolidation**." (Defs.' Mem. in Supp. of Second Mot. for Summ. J. at 7, Dec. 27, 2013, Docket No. 47 (emphasis added).)  These documents plainly indicate that State Farm's original argument in its second motion for summary judgment was that the lawsuit limitation clause barred **this action** for consolidation not any arbitration proceedings of the 115 at-issue claims.  State Farm raised the argument that the lawsuit limitation clause barred arbitration of the 115 claims only in its reply brief.  "[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief."  *See Redking Foods LLC v. Minn. Assocs. LP*, Civ. No. 13-0002, 2014 WL 754686, at *4 & n.5 (D. Minn. Feb. 26, 2014) (internal quotation marks omitted) (collecting cases).  Because State Farm raised the issue of the applicability of the lawsuit limitation clause to the ability to arbitrate only in its reply brief, Alpine Glass did not have an opportunity to respond to the argument and summary judgment on this basis would therefore be inappropriate.  *See Salerno v. Ridgewater College*, Civ. No. 06-1717, 2008 WL 509001, at *4 (D. Minn. Feb. 8, 2008) ("It would be unfair to permit a movant to sandbag a nonmovant by asking the court to grant summary judgment on the basis of an argument made for the first time in a reply brief.  There was no reason why Ridgewater could not have made the standing argument in its initial brief.  Its failure to do so is itself sufficient reason to reject the argument."); *see also Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) (finding that a district court could not rule on summary judgment on a ground raised in a reply brief because the plaintiff did not have an adequate opportunity to respond).

Second, even if the Court were to consider the argument that the lawsuit limitation clause bars arbitration of the 115 claims, it would reject that argument given the overwhelming authority from Minnesota courts that arbitration proceedings are not "actions" and therefore are not governed by clauses which place time limitations on actions.  Additionally, the Court notes that *Johnson* does not support State Farm's contention that unambiguous policy provisions which

(Footnote continued on next page.)

arbitrate the 115 claims in which the loss occurred more than one year prior to the commencement of this lawsuit.[15]

But even if Alpine Glass has a right to arbitrate the 115 claims, State Farm argues that this current proceeding, to consolidate those arbitrations, is an action within the meaning of the lawsuit limitation clause, and is therefore barred as it was not commenced by Alpine Glass within one year of the losses giving rise to those claims. One court in this District has adopted State Farm's position, and held that a declaratory action seeking consolidation of claims for arbitration – such as the one brought here by Alpine Glass – is

_____

(Footnote continued.)

limit the time in which an action may be brought apply to commencing arbitration proceedings. In *Johnson* the court discussed policy ambiguity and distinguished the case from *Vaubel Farms*, but did so in the context of determining whether the policy at issue provided a right to arbitrate in the first instance – an issue that is not before the Court in the present motions. *Johnson* concluded that the policy at issue provided only a right to appraisal and did not provide a right to arbitration because it contained no "ambiguous language that would lead a reasonable insured to conclude that the policy contains an agreement to arbitrate [the insurer]'s liability under the policy." 732 N.W.2d at 345. After determining that appraisal and arbitration were not analogous in that "appraisal does not determine liability under a policy," the court then went on to conclude that "the **appraisal** provision is governed by the two-year limitation on actions or suits to recover under the policy" because "even if Johnson succeeded in determining the amount of loss through appraisal, she would have to bring an action to determine [the insurer]'s liability, and she concedes such an action is barred by the limitation on actions contained in the policy." *Id.* at 346 (emphasis added). *Johnson*'s reasoning applies only to appraisal provisions and did not alter *Vaubel Farms'* holding that arbitration proceedings themselves are not governed by lawsuit limitation clauses.

[15] That the lawsuit limitations clause does not govern arbitration proceedings is confirmed by the language of the policy itself. The policy discusses arbitration under a separate heading. The policy provides that "[w]hen the amount of the claim is $10,000 or less, any dispute in the amount owed must be decided by arbitration conducted in accordance with the Rules Of Procedure For No-Fault Arbitration of the *No-Fault Act*." (Second Kern Aff., Ex. A at 32 (emphasis in original).) This language strongly suggests that arbitration claims are not governed by the policy's lawsuit limitations clause, but are instead governed by Minnesota law regarding arbitration under the No-Fault Act, which provides a six-year statute of limitations. *See State Farm Liberty Mut. Ins. Co.*, 678 N.W.2d 719, 725 (Minn. Ct. App. 2004).

governed and can be barred by a lawsuit limitation clause in an insurance policy. *See Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *3 (D. Minn. Oct. 28, 2010) ("The policy must be read to mean that any 'suit' or 'action' made in conjunction with the arbitration process must be commenced within 24 months of incurring the loss. Because this declaratory judgment action is certainly within the definition of 'suit' and 'action,' the underlying claims that fall outside the 24-month window may not be consolidated."). The court specifically distinguished motions to consolidate arbitrations from motions to compel arbitration, which would not be barred by a lawsuit limitations clause. *See id.* at *3 ("[A]lthough this dispute is certainly germane to the arbitration process, it cannot be considered to be subsumed in that process. This is not an action to compel arbitration; indeed, by all indications Defendants appear ready to arbitrate this matter to completion following this Court's decision."). Similarly, the Minnesota Court of Appeals has concluded that an action to compel arbitration and a court's enforcement of an arbitration award do not constitute actions or lawsuits and therefore are not barred by lawsuit limitations clauses. *See Vaubel Farms, Inc.*, 679 N.W.2d at 411.

The Court concludes that the reasoning in *Alpine Glass, Inc. v. Country Mutual Insurance Co.* – drawing a distinction between compelling arbitration or enforcing arbitration awards (which are not barred by lawsuit limitations) and consolidating arbitration (which is barred by lawsuit limitations) is contrary to the Minnesota Supreme Court's description of the role of consolidation in glass claim cases. In *Illinois Farmers Insurance Co.*, the Minnesota Supreme Court considered a claimant's right to consolidate

claims that are subject to mandatory arbitration under the No-Fault Act.  683 N.W.2d at 805.  The Court held that such claims could be consolidated, explaining that "the power of courts to order arbitration and enforce arbitration awards 'imports power to regulate the method of enforcement,'" which includes consolidation.  *Id.* (quoting *Grover-Dimond Assocs. v. Am. Arbitration Ass'n*, 211 N.W.2d 787, 789 (Minn. 1973)).  The Court concludes that consolidation of arbitrable claims cannot be barred by lawsuit limitations clauses because consolidation of arbitrable claims is part of the Court's power to order arbitration and enforce arbitration awards – powers which are not barred by lawsuit limitations clauses.  Accordingly, the Court concludes that Alpine Glass' action to consolidate claims for arbitration is not barred by the lawsuit limitations clause contained in State Farm's policy, and will deny State Farm's second motion for summary judgment.[16]

## II.      MOTION TO CONSOLIDATE CLAIMS FOR ARBITRATION

Alpine Glass moves to consolidate the 140 claims into a single arbitration. Whether to consolidate claims for purposes of mandatory arbitration is one of the legal issues that courts have subject matter jurisdiction to decide.  *See BuyRite Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-4462, 2010 WL 145277, at *1 (D. Minn. Jan. 8, 2010) (explaining that "district courts have discretion to order consolidation of multiple shortpay claims for purposes of arbitration under the [No-Fault] Act").

---

[16] Because the Court concludes that consolidation is not barred by the lawsuit limitation clause, it does not consider Alpine Glass' argument that State Farm waived its right to rely on the lawsuit limitation clause by failing to adequately plead it as a defense in its answer.

Courts consider several factors when determining whether to order consolidation of claims for arbitration, including "the efficiencies of consolidation, the danger of inconsistent judgments if disputes are arbitrated separately, and the prejudice that parties may suffer as a result of consolidation." *Ill. Farmers Ins. Co.*, 683 N.W.2d at 806-07. Whether the Court should order consolidation "is a fact-sensitive question that is best decided by the district court exercising its sound discretion." *Id.* at 807.

The Minnesota Supreme Court has explained that "[e]fficiencies may result from a commonality of witnesses or evidence in multiple proceedings, similarity of claims between the parties, or the dependence of multiple claims on a common set of facts." *Id.* "On the other hand, a court may find that the differences between claims, such as differences in governing law or factual differences between individual claims, make consolidation undesirable." *Id.* Here, State Farm argues that because each glass claim was paid based upon a set of competitive bids that was unique to that claim, no efficiency will result from consolidated arbitration proceedings. As an initial matter, State Farm's argument is inconsistent with its contention in support of its first summary judgment motion that these claims involved a single issue for the Court to resolve – whether State Farm's payments complied with the policies and the Consent Order. More fundamentally, the Court finds that there are numerous efficiencies that would be gained from consolidating arbitration in this case. First, there is commonality among the witnesses, the evidence, and the parties. *See Boulay Auto Glass, Inc. v. Ill. Farmers Ins.*

*Co.*, No. 27-CV-12-14646, slip op. at 6 (Minn. Dist. Ct. Dec. 12, 2012)[17] ("[C]onsolidation will promote efficiency by allowing all of the claims to be resolved in one proceeding, which will minimize the burden on the witnesses and the parties and reduce the time expenditure by the arbitrator by avoiding a situation where a second arbitrator must get acquainted with the parties and the background of the dispute.").  For example, presumably a single State Farm representative could testify as to their practices in obtaining the competitive bids.  Second, although each claim was subject to unique bids, some of the problems with the competitive bid documents produced by State Farm are consistent throughout the claims – for example, that the high bids are handwritten and that the competitive bids do not contain bids for labor costs.  Substantial resources would be saved by resolving these common questions in a single proceeding.  *See Alpine Glass, Inc. v. Ill. Farmers Ins. Co.*, 695 F. Supp. 2d 909, 923-24 (D. Minn. 2010) ("The efficiencies inherent in the ability to present and consider generalized evidence are the primary reason why the Minnesota Supreme Court permits consolidation of no-fault claims in appropriate cases.").  Because similar questions regarding State Farm's competitive bidding practice exist, consolidation would also alleviate any danger of inconsistent judgments.  For example, it would be inconsistent if one arbitrator found that a bid could be considered competitive even if it failed to include labor costs, if another arbitrator found the opposite.

---

[17] (*Reproduced at* First Decl. of Rachael J. Abrahamson, Ex. 28 at 56, Sept. 3, 2012, Docket No. 28.)

Finally, consolidation will not result in prejudice. Consolidation will allow Alpine Glass to pursue its claims without incurring the administrative costs associated with bringing 140 separate claims to arbitration. *See Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *3 (D. Minn. Oct. 28, 2010) ("[T]he administrative costs of subjecting each claim to separate arbitration proceedings is astounding, and likely exceeds the total amount in controversy."); *Alpine Glass, Inc. v. Am. Family Ins. Co.*, Civ. No. 06-4213, 2007 WL 1567630, at *2 (D. Minn. May 29, 2007) ("American Family's claim of prejudice in opposing consolidation amounts to no more than its desire to have each action separately arbitrated. However, the court finds that the cost-prohibitive nature of individually arbitrating fourteen hundred claims would unfairly prejudice Alpine Glass."). Additionally, State Farm will not be prejudiced because, to the extent any of the claims raise unique issues (such as whether an assignment was made), State Farm will be able to raise those issues in the context of the consolidated proceeding. *See Alpine Glass, Inc. v. Country Mut. Ins. Co.*, Civ. No. 09-3492, 2010 WL 4386896, at *4 (D. Minn. Oct. 28, 2010) ("Any subtleties that distinguish one claim from another can be voiced easily by Defendants at a single arbitration proceeding."); *see also BuyRite Auto Glass, Inc. v. Ill. Farmers Ins. Co.*, Civ. No. 06-4462, 2010 WL 145277, at *2 (D. Minn. Jan. 8, 2010) ("Farmers has not argued persuasively that consolidation will prevent it from challenging the validity of the individual assignments in defending against the merits of shortpay claims in arbitration."). Therefore, the Court finds that consolidation of the 140 claims at issue is appropriate.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to [Compel Arbitration and to] Consolidate Invoices for Arbitration [Docket No. 24] is **GRANTED**.  The Court hereby declares that all claims arising from the invoices itemized in Exhibit E to the Declaration of Michael Reid [Docket No. 27], with the exception of claim number MSI-74243 for customer Alison Arver, shall be consolidated into a single arbitration proceeding.  The arbitrator has the discretion to manage the proceeding consistent with the No-Fault Act and the Rules of Procedure for No-Fault Arbitration.

2.      Defendants' Motion for Summary Judgment [Docket No. 30] is **DENIED**.

3.      Defendants' Second Motion for Summary Judgment as to Claims Arising Under State Farm Form 9823A [Docket No. 45] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 3, 2014
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge